DETERMINED IN THE

## THIRD DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1906.

---

### The Quincy Horse Railway & Carrying Company v. Anna M. Spilker.

1. REVERSAL WITHOUT REMANDMENT—*what essential to.* It is only where it appears from the evidence that no recovery could be permitted to stand that the Appellate Court has authority to reverse a judgment in favor of the plaintiff without remanding.

Action in case for personal injuries. Appeal from the Circuit Court of Adams county; the Hon. ALBERT AKERS, Judge, presiding. Heard in this court at the May term, 1906. Affirmed. Opinion filed November 27, 1906.

GOVERT, PAPE & GOVERT and J. N. CARTER, for appellant.

McCARL & FEIGENSPAN and VANDEVENTER & WOODS, for appellee.

PER CURIAM. This is an action in case, by appellee against appellant to recover damages for personal injuries alleged to have been received by her through the negligence of appellant's servants, while she was a passenger upon one of its street cars.

A trial by jury resulted in a verdict and judgment against the defendant for $500 from which judgment the defendant appeals.

At the close of plaintiff's evidence and again at the close of all the evidence, peremptory instructions were offered by the defendant and refused by the court. The sole ground for reversal urged and argued is, that under the facts shown by the evidence, the plaintiff is not entitled to recover, and counsel insist that if the judgment is not reversed with a finding of fact, that it be affirmed. The declaration consists of several counts. Those more particularly relied upon by appellee are the sixth and seventh, the averments of which, briefly stated, are as follows: The sixth count avers that on April 15, 1904, the defendant was operating a street railway propelled by electricity, in the city of Quincy; that the plaintiff became a passenger upon one of its street cars; that defendant had notice of the point at which she desired to leave the car; that upon the arrival of the car at said point the servants of the defendant failed to stop said car but ordered and directed the plaintiff to alight therefrom, while said car was moving at a rate of speed so great as to render compliance with such order and direction, hazardous and dangerous to her safety, as defendant well knew, but which rate of speed, hazard and danger, were not known or apparent to the plaintiff, and by the exercise of ordinary care could not have been known to her; that she complied with said order and was thrown from the car, and injured. The seventh count is similar to the sixth except that it is therein averred that the speed of the car was slackened and that the defendant then ordered and directed the plaintiff to alight therefrom while it was still moving at the rate of speed described in the sixth count.

Appellee testified upon the trial that she was sixty-six years of age and had lived in Quincy forty years; that on April 14, 1904, she boarded a north-bound car at Eighth and Adams streets and at Eighth street switch paid her fare, saying to the conductor, "You let me off on Sixth and Main streets;" that at Eighth and

Main streets one Mrs. Kerker said to the conductor, "You let Mrs. Spilker off on Sixth street;" that the car then went west; that witness was sitting on the south side of the car in the hind end; that when Sixth street was reached the conductor came to her and said, "You must get off here; this is Sixth street; this is the place where you must get off the car;" that the car was then in motion; that after the conductor had spoken to her witness stood up and the conductor took her by the arm and led her to the steps; that when she got onto the step the conductor let her loose and she knew nothing more; that the car was in motion when the conductor let loose of her; that she wanted to go further with one limb, and with the left hand was feeling around the car; that she wanted to hold herself but could not and the car pushed her over; that she fell in the street and knew nothing more; that her left hip was the first part of her body to touch the street; that she put her foot down towards the street but did not know whether it touched the street or not.

White, an apprentice motorneer who was operating the car at the time of the accident, testified that as the car approached the crossing at Sixth street, he received a signal by bell from the conductor to stop the car; that he threw off the power and set the brake; that the speed of the car gradually slackened until it stopped; that after slackening the speed the power was not again applied before the car stopped and that the car was not again started until after he saw plaintiff upon the pavement. Stout, the regular motorneer who was upon the car instructing White, corroborates the testimony of White. Felsing, a passenger, testified to the same effect. He further testified that he was standing upon the platform of the car facing the conductor; that he heard the conductor call out either "wait" or "here, lady;" that he turned around and saw the plaintiff with her foot upon the first step of the car and her hands on one of the rails of the car; that the arm of the conductor was extended like he was try-

ing to hold her; that "it seemed like he had hold of the lady's clothes, shawl seemed to flap in the air," and that she then either stepped or fell off; that he did not know whether the conductor touched her but that he saw his arm extended; that he did "not know whether he got his hand on any garment that she was wearing;" that he saw "something fly up on her like a shawl;" that the car moved three or four feet after she fell. He further testified that he did not hear the conductor say to plaintiff, "This is Sixth street. This is the place where you must or have to get off," nor did he see the conductor go into the car at Sixth street and take the plaintiff by the arm or shoulder and lead her out of the door and over the platform and on to the step of the car. Nellie Nebe, also a passenger, testified that when the signal was given the car gradually slowed up and stopped; that there was no jerk; that she saw appellee when she got up and started out of the car; that the conductor was not in the car at the time and did not go into the car and take hold of appellee or tell her that was the place for her to get off; that appellee went to the door alone, after which the witness did not see her until she had fallen. Bailey, the conductor, testified that as the car approached the crossing he was on the platform of the car. He denied that he ordered appellee to get off or told her that that was the place for her to get off, or that he took hold of her arm and led her to the door and out upon the platform to the steps. He stated that when he called out the name of the street, he saw her leave her seat in the car and start for the door; that she hesitated for a moment and then moved over as though she was going to get off; that he called to her to wait until the car had stopped, but she immediately stepped off; that just as she did so, he tried to get hold of her and that he got hold of her shawl but did not succeed in stopping her; that he let loose of the shawl and she stepped down on the step and started to step from there to the ground and fell; that at the time the car was running very

slowly, and stopped when it had passed her four or five feet.

The witnesses Byerly and Sledding, who saw the accident from the sidewalk, corroborate Bailey, the conductor, in some particulars. They both testify that they saw appellee on or come on the platform, saw her go to step and saw the conductor reach to get hold of her and miss his hold; and Sledding testifies that he saw some garment fly loose from her shoulder. He also heard some one on the car call out, "Hold, there."

That appellee got off the car while the same was in motion does not admit of doubt under the evidence. Whether or not she did so by the direction and with the assistance of the conductor is the crucial question in the case. If appellee's version of the transaction is true, no argument is needed to establish her right of recovery. The attitude of appellant on this appeal precludes a consideration by us of the record, for the purpose of determining whether the verdict of the jury is so clearly against the weight of the evidence as to demand a reversal of the judgment and a remandment of the cause for another trial. We are only at liberty, within the scope of our authority, to reverse without remanding, to consider whether or not, under the evidence, a recovery by appellee can be permitted to stand. Borg v. C., R. I. & P. Ry. Co., 162 Ill. 348.

There is evidence, in corroboration of the testimony of appellee, tending to show that the conductor was in close proximity to appellee when she was on the platform of the car attempting to alight, and that he then had hold of appellee. Henry Felsing testified: "When I turned around, I saw the conductor, it looked as if he had hold of plaintiff somewhere along about the shoulder. I seen the conductor have hold of her, looked like he extended his arm, like he was trying to hold the lady. It seemed like he had hold of the lady's clothes."

If the conductor took hold of appellee—a woman sixty-six years of age—before she alighted from the

car, for the purpose of preventing her from doing so while the car was in motion, it is not an unreasonable inference that he would have accomplished his purpose and that he would not have permitted her to alight until the car came to a full stop. We are not prepared to say that the evidence so clearly excludes the hypothesis that the conductor took hold of appellee, and that he did so for the purpose of enabling her to alight from the car while it was still in motion, as to justify us in holding that she should not be permitted to recover.

Upon the record as presented for review on this appeal the judgment will be affirmed.

*Affirmed.*